UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RONALD SPOOR                 1:19-CV-01675 (JLS-MJR)

              Petitioner,        REPORT, RECOMMENTION
                                       AND ORDER
     v.

THE PEOPLE OF THE
STATE OF NEW YORK,

              Respondent.
_____

        This case has been referred to the undersigned pursuant to Section 636(b)(1) of

Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 9)

Petitioner Ronald Spoor ("petitioner" or "Spoor") has filed a *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1) For the following reasons, it is

recommended that the petition be denied and that a certificate of appealability also be

denied.

## **BACKGROUND AND RELEVANT FACTS**

### *Spoor's Federal Court Indictment*

        On April 11, 2013, a federal grand jury in the Western District of New York issued

an indictment charging Spoor with (1) two counts of producing child pornography in April

and July of 2012 (in violation of 18 U.S.C. § 2251(a), § 2251(e)); and (2) four counts of

possessing child pornography on December 18, 2012 (in violation of 18 U.S.C. §

2252A(a)(5)(B), § 2252A(b)(2)) (the "federal charges"). *See United States v. Spoor*, 6:13-CR-6059; Dkt. Nos. 1, 6.[1]

The federal charges arose from the discovery of hard drives belonging to Spoor that contained images of "young boys, in sexually suggestive positions, and engaged in sex acts with adult men." *United States v. Spoor*, 904 F.3d 141, 146 (2d Cir. 2018). Those images formed the basis of the child pornography possession charges. *Id.* The production charges arose from two videos found on Spoor's computer hard drives displaying the genitals of Spoor's son and other underage boys. *Id.*

On April 5, 2013, Spoor was ordered detained on the federal charges pending trial. (*Id.* at Dkt. No. 4)

<u>Spoor's State Court Indictment</u>

On or around June 20, 2013, over two months after Spoor was indicted on the federal charges, Spoor was indicted, in New York State Court, County of Seneca, for crimes involving sexual abuse of minors. Specifically, Spoor was charged with: (1) predatory sexual assault against a child (in violation of N.Y. Penal Law § 130.96); (2) first-degree criminal sexual act (in violation of N.Y. Penal Law § 130.50(3)); and (3) first-degree sexual abuse (N.Y. Penal Law § 130.65(3)) (the "state charges"). (Dkt. No. 20-1) The charges stemmed from allegations that Spoor sexually abused two eight-year-old boys in the summer of 2011.[2] (State Record ("SR") 25-26.)[3] Following a pre-trial hearing, the state

---

[1] Spoor does not challenge the federal charges, or his subsequent federal conviction, in his instant Section 2254 petition, nor would such a challenge be permitted under the law. However, these charges, and the resulting federal conviction, are relevant to his instant challenge of his state court conviction.

[2] The state charges and the federal charges arose from different conduct. The conduct that formed the basis of the state charges occurred in the summer of 2011, while the conduct that formed the basis of the federal charges occurred in April, July, and December of 2012.

[3] The state record can be found at Docket No. 12-2.

court denied Spoor's motion to suppress statements he made to law enforcement admitting the abuse. (SR 26-30.) Specifically, the state court held that Spoor was not in custody prior to the admissions and that, in any event, Spoor had validly waived his *Miranda* rights before speaking with law enforcement. (*Id.* 30.)

### Spoor's State Court Guilty Plea and Sentence

Spoor's state court trial was scheduled to begin on September 15, 2014. (Plea 2-3.)[4] On September 14, 2014, prior to the start of jury selection, the state court explained to Spoor that the prosecution offered him a plea of guilty to the criminal sexual act charge, a class B felony, in full satisfaction of the state charges. (*Id.*) The court further informed Spoor that if he were to agree to this offer and accept responsibility for the conduct charged, the court would consider imposing the minimum sentence of five years incarceration and five years post-release supervision. (*Id.*) The court asked Spoor if he knew the sentencing range should he be convicted, following trial, of the most serious charge, predatory sexual assault against a child, a class A felony. (*Id.*) After Spoor responded, "life," the court clarified that a life sentence was the maximum, but that the court could sentence him to a minimum of fifteen years. (*Id.* at 3-4)[5]

During this colloquy, the court asked Spoor if he had any "federal matters" pending, and Spoor responded in the affirmative. (*Id.* at 4.) Spoor's defense counsel, Steven Getman, Esq., explained to the court that he was not representing Spoor in the federal case, but that he was aware of the federal indictment and was aware that pretrial hearings

---

[4] Transcripts of the state court plea and sentencing can be found at Docket No. 12-3.
[5] Later in the proceeding, the court clarified that the minimum sentencing range as to predatory sexual assault of a child was ten to twenty-five years, and that the maximum sentence was life. (Plea 9.) Thus, if convicted on the most serious charge, Spoor faced a minimum sentence of ten years.

had been held in that matter. (*Id.* at 5.) The prosecutor then explained that Spoor was currently charged, in federal court, with two counts of production of child pornography and four counts of possession of child pornography. (*Id.*)

The court asked Spoor if he wanted time to discuss the prosecution's offer with his attorney, and Spoor stated that he would. (*Id.* at 6.) Prior to this recess, the court discussed the context of the prosecution's plea offer. The court noted that while there was some evidence that the two minor victims "may have contradicted themselves", Spoor's admissions to the police would also be in evidence. (*Id.* at 6-7) The court emphasized the "large discrepancy" between the mandatory sentence should Spoor be convicted of the most serious charge at trial, and the prosecution's offer of five years incarceration pursuant to the plea agreement. The court recognized that Spoor "could be looking at the rest of [his] life in prison" and that it wanted to ensure that Spoor fully "[understood] the risks." (*Id.*) The court noted that Spoor had "the matter still pending in Federal Court" and that the court did not "know was [was] going to happen there." (*Id.* at 8.)

Following a lengthy recess to consult with defense counsel and his parents, Spoor informed the court that he wanted to accept the plea offer. (*Id.* at 8-12.) Mr. Getman (hereafter "plea counsel") stated that Spoor was aware of the sex offender reporting requirements attached to a guilty plea, as well as "other terms and conditions at sentencing" including that "the DA would indicate to the Federal prosecutors [petitioner's] cooperation in this matter." (*Id.* at 12.) The court then asked Spoor whether it was his intent to plead guilty under those terms and Spoor stated: "Yes." (*Id.*)

After being placed under oath, Spoor again stated that he wished to plead guilty to first-degree criminal sexual act, a class B felony, in full satisfaction of the indictment. (*Id.*

at 12-13.) Spoor stated that he was 50 years old and had graduated from school. (*Id.* at 13)[6] Spoor also stated that he understood the proceedings, had no questions, and had enough time to discuss the charges with his counsel. (*Id.* at 13-14.) Spoor denied taking any medicine, drugs, or alcohol which would interfere his ability to understand the proceedings; denied that he was currently under the care of a doctor; and denied that he had been threatened for purposes of obtaining the guilty plea. (*Id.* at 14.) When asked if he had been promised anything other than what was placed on the record in order to convince him to plead guilty, Spoor answered "no." (*Id.*)

Spoor was further informed, by the state court, that his guilty plea would result in him "giving up" certain rights, including the right to challenge any police conduct in connection with the investigation, the right to a trial by jury, the right to confront and cross-examine witnesses, the right to remain silent, the rights to a presumption of innocence and to present defenses, and the right to hold the prosecution to a burden of proof beyond a reasonable doubt. (*Id.* at 16.) Spoor affirmatively acknowledged that he understood that he would be giving up these rights. (*Id.*)

Spoor affirmed that he understood everything that had been said so far in the proceeding; that he still wanted to plead guilty; that he had been truthful; and that he was satisfied with plea counsel's representation. (*Id.* at 16-17.) Spoor then admitted that, during the summer of 2011, in Waterloo, New York, he engaged in oral sexual conduct with an individual identified in the indictment as "John Doe Number One", who was less than eleven years old at the time. (*Id.* at 17.)

---

[6] The state court record establishes that Spoor graduated from high school. (SR 28, 39, 45.)

The state court accepted Spoor's guilty plea. (*Id.* at 18.) Defense counsel indicated that Spoor likely would not make statements, other than biographical, with respect to the presentence investigation, "given the Federal charges." (*Id.* at 18.) On February 6, 2015, the state court sentenced Spoor to five years in prison followed by five years post-release supervision. (Sentencing 3.) It is from this conviction and sentence that Spoor now requests relief.

### *Spoor's Federal Court Trial, Conviction and Sentence*

A trial as to Spoor's federal charges was scheduled to begin on January 5, 2016. (*See* 6:13-CR-6059, Dkt. No. 74) On December 22, 2015, the Government moved, pursuant to Rule 414(a) of the Federal Rules of Evidence, to admit evidence of Spoor's prior acts of child molestation.[7] (*Id.* at Dkt. No. 81) The proffered evidence included (1) Spoor's state court conviction for criminal sexual act in the first degree, as a result of his guilty plea; (2) the state court plea transcript; and (3) testimony by a State Police investigator regarding Spoor's admissions to the conduct charged in the state court proceedings, specifically the sexual abuse of two minor boys.[8] (*Id.* at Dkt. No. 81) The Honorable Charles J. Siragusa granted, in part, the Government's application. *See United States v. Spoor*, 904 F.3d 141, 147, 155 (2d Cir. 2018). Judge Siragusa ruled that while the Government was permitted to introduce "a sanitized version" of Spoor's state court

---

[7] Rule 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other act of child molestation." In this context, "child molestation" includes production and possession of child pornography. *See* Fed. R. Evid. 414(d)(2)(B).

[8] The Government also sought to admit the testimony of: (1) an adult witness who would testify that Spoor sexually abused her approximately 35 years earlier, when she was around 7 years of age; (2) a child witness who would testify that Spoor sexually abused her from approximately 2002 to 2006, when she was 3 to 7 years old; and (3) a child witness who would testify that, in 2011, Spoor took naked photos of him and another child. (*See* 6:13-CR-6059, Dkt. No. 81)

conviction for criminal sexual act, it could not use Spoor's admissions to law enforcement or the testimony of alleged victims, because "the risk of undue prejudice from this evidence outweighed its marginal probative value." (*Id.*)[9]

On January 13, 2016, a federal jury found Spoor guilty as to all charges of production and possession of child pornography. (*See* 13-CR-6059, Dkt. No. 98) On August 15, 2016, Judge Siragusa sentenced Spoor to an aggregate term of incarceration of 360 months. (*Id.* at Dkt. No. 108) The federal sentence was "to be served consecutively to any sentence imposed in state court." (*Id.*) During sentencing, Judge Siragusa indicated that Spoor was in federal custody, and that he would not begin his state sentence until after he completed the federal sentence. (*Id.* at Dkt. No. 136, pg. 27) The Government, defense counsel, and the probation officer all appeared to agree with Judge Siragusa's assessment as to the likely order in which the federal and state sentences would be served. (*Id.*)

### Spoor's Appeal of his State Court Conviction

Spoor, through counsel, appealed his state court conviction for criminal sexual act in the first degree, to the Appellate Division, Fourth Department. *See People v. Spoor*, 148 A.D.3d 1795 (4th Dept. Mar. 31, 2017). Spoor claimed, *inter alia*, that plea counsel rendered ineffective assistance and that his guilty plea to the state charge was involuntary. (SR 17-19.) The Appellate Division unanimously affirmed the judgment of conviction. *Spoor*, 148 A.D.3d at 1797. The court concluded that, to the extent the

---

[9] The Second Circuit later affirmed Judge Siragusa's evidentiary ruling, holding that Spoor's state court conviction was properly admitted under Rule 414(a) because Spoor's sexual interest in children was relevant to the charges and because the district court had excluded the other proffered evidence, which "limited the potential for graphic and potentially inflammatory testimony from [Spoor's] alleged victims." *Spoor*, 904 F.3d at 155.

ineffective trial counsel claim survived Spoor's guilty plea, the claim was outside of the record and had to be raised in a motion pursuant to Article 440 of the New York Criminal Procedure Law ("CPL"). The court held that Spoor's involuntary plea claim was unpreserved and, in the alternative, found it to be without merit. *Id.* at 1797-98.

Spoor, again through counsel, sought leave to appeal from the New York State Court of Appeals. On August 9, 2017, leave for further appeal was denied. *See People v. Spoor*, 29 N.Y.3d 1134 (2017) (SR 51).

*Spoor's Collateral Attacks on his State Court Conviction*

On July 30, 2018, Spoor filed a *pro se* collateral attack on his state court conviction pursuant to N.Y. C.P.L.R. § 440.10 (SR 52-59) Spoor claimed ineffective assistance of appellate counsel on the ground that counsel falsely told Spoor that counsel had appeared for oral arguments on the appeal. (*Id.*) The state court denied the § 440.10 motion in September 2018, ruling that Spoor's own motion papers confirmed that oral arguments were held on the appeal and that, in any event, claims of ineffective appellate counsel had to be raised before the Appellate Division, not the state trial court. (SR 72-73.) Petitioner did not seek leave from the Appellate Division to appeal the court's denial of the motion.

Spoor filed another *pro se* § 440.10 motion in July of 2019. (SR 74-82.) Therein, Spoor claimed that he had pled guilty based on his plea counsel's "misleading and inaccurate advice and information," including counsel's advice that Spoor would not be prosecuted federally if he entered a plea on the state charges. (SR 79.) The state court denied the motion on its merits. (SR 86-89.)

Spoor sought leave from the Appellate Division to appeal the court's denial of the second § 440.10 motion. (SR 90-121.) The Appellate Division denied leave to appeal on November 27, 2019. (SR 138-39.)

## DISCUSSION

### *Subject Matter Jurisdiction*

Federal district courts may entertain applications for habeas corpus relief from state court judgments only for petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). The Supreme Court has interpreted this statutory language to require that the habeas petitioner be "'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (*citing Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). The Supreme Court has held, however, that when a prisoner is serving consecutive sentences, he is "in custody" for habeas purposes under any one of them such that "consecutive sentences [must] be viewed in the aggregate." *Garlotte v. Fordice*, 515 U.S. 39, 45 (1995) (*citing Peyton v. Rowe*, 391 U.S. 54, 67 (1968)). *See also Hurdle v. Sheehan*, 13-cv-6837, 2016 WL 4773130, at *3 (S.D.N.Y. Sep. 12, 2016).

Petitioner is presently attacking his state court conviction for criminal sexual act, for which he was sentenced to five years incarceration and five years post-release supervision, on February 6, 2015. However, on August 15, 2016, petitioner was sentenced to a 360 month aggregate term of incarceration following his federal court conviction for various child pornography crimes. Petitioner was in federal custody at the time his federal sentence was imposed, and his federal sentence was specifically imposed to run consecutively with any state court sentences. Moreover, during the federal

sentencing proceeding, Judge Siragusa, as well as counsel for all parties and the probation officer, all agreed that petitioner would not serve his state sentence until his federal sentence was completed.

Petitioner is currently incarcerated at the Allenwood Low Federal Correctional Facility. (Dkt. No. 20) Respondent has represented to the Court that, according to the Office of Sentencing Review at the New York Department of Corrections and Community Supervision, petitioner is not due to commence his state prison sentence until he has completed the federal sentence imposed by Judge Siragusa. (Dkt. No. 20, pg. 2) To that end, it appears that a detainer was issued as to petitioner, with respect to the state court charges. (Dkt. No. 20-4)

All of the evidence in the record indicates that petitioner was sentenced to consecutive state and federal sentences; that he has not yet commenced the state sentence that he is challenging here; and that he will not begin the state sentence until he completes the 30-year federal prison sentence imposed on August 15, 2016. Thus, the Court finds that it has subject matter jurisdiction over the claims in the instant Section 2254 petition. *See Peyton*, 391 U.S. at 55, 67 (petitioner is in custody for habeas purposes when he is incarcerated under consecutive sentences and claims the sentence to be served in the future is constitutionally invalid).

### *Timeliness of the Petition*

Petitioner's conviction became final on November 9, 2017, 90 days after the New York Court of Appeals denied leave to appeal. *See* 28 U.S.C. § 2244(d)(1)(A); *Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). Petitioner therefore had one year, until November 9, 2018, to file a habeas petition. *See* 28 U.S.C. § 2244(d)(1). The instant

petition was filed on or about December 8, 2019 (Dkt. No. 1 at pg. 23), 11 months after the expiration of the limitations period. Accordingly, the petition is untimely unless petitioner qualifies for statutory or equitable tolling, sufficient to cover the entire 11-month period.

It is clear that the petition qualifies for statutory tolling for the period during which petitioner's first § 440.10 collateral challenge motion was pending in state court. *See* 28 U.S.C. § 2244(d)(2). This would include the period from July 30, 2018, the date the § Section 440.10 motion was filed, until at least September 4, 2018, the date the state court denied the motion. (Dkt. No. 10; SR 55, 73.). This 37 day-period of statutory tolling would extend petitioner's habeas deadline until December 16, 2018. Petitioner did not file the petition until nearly a year later. Accordingly, if this were the only period of statutory tolling, the petition would be untimely.[10]

Petitioner never sought leave to appeal the trial court's denial of the first § 440.10 motion. Second Circuit precedent suggests that petitioner's first § 440.10 motion therefore remained "pending" for statutory tolling purposes until 30 days after petitioner was served with a copy of the state trial court's order denying the motion. *See Bennett v. Artuz*, 199 F.3d 116, 120-21 (2d Cir. 1999) *(citing* C.P.L. § 460.10(4)); *Morales v. Sabourin*, 00 Civ. 8773, 2004 U.S. Dist. LEXIS 3415, at *23 n.9 (S.D.N.Y. Mar. 5, 2004).

Petitioner has filed, with the Court, a copy of the September 4, 2018 state court order denying his first § 440.10 motion. Thus, petitioner seemingly received a copy of the

---

[10] If the first § 440.10 motion was no longer pending after the trial court denied it, then the second § 440.10 motion, filed in July 2019, would not further toll the limitations period because that period would have already expired when petitioner filed it. *See Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir. 2005) (state court post-conviction motion must be pending during the limitations period to qualify for statutory tolling).

state court order at some juncture. However, there is no evidence in the record as to when this order *was actually served* on petitioner.[11] Based on this lack of information in the record, the Court cannot ascertain when the 30-day period of tolling began for purposes of determining whether the instant petition is timely. For this reason, and because the Court finds that petitioner is not entitled to the relief requested even if the petition was timely filed, the Court will reach a determination on the merits. *See James v. Smith*, 9:12-CV-857, 2013 U.S. Dist. LEXIS 120546, n. 3 (N.D.N.Y. Aug. 1, 2013) (deeming a petition timely where "respondent admitted that he was unable to establish that the District Attorney's Office served petitioner himself with a copy of the Appellate Division's Order"…"[t]herefore, petitioner's time to seek leave to appeal to the Court of Appeals ha[d] not yet expired [and the] statute of limitations was not exceeded."); *Thigpen v. Brown*, 06-CV-3110, 2008 U.S. Dist. LEXIS 10179 (E.D.N.Y. Sept. 26, 2008) ("Since there is no evidence that the petitioner ever received a copy of the [state court] order, the statute of limitations for filing a habeas corpus petition remains tolled [and] [t]he petitioner's [] motion is still 'pending.'").

### *Discussion of Claims*

Petitioner seeks federal habeas relief on the grounds of ineffective assistance of counsel at the time of his state court plea. (Dkt. No. 1) For the following reasons, the Court finds that petitioner's request for relief should be denied.

---

[11] Respondent admits that it has been "unable to locate any document verifying service of the trial court's order on the petition." (Dkt. No. 11, pg. 14) Respondent submits that "[w]hile it appears that the [p]etition may be untimely, [it] was unable to obtain documentation necessary to conclusively establish untimeliness." (*Id.* at pg. 13) Thus, respondent "believes that the Court should reach the merits of the [p]etition." (*Id.*)

*Review of State Court Decisions Under the AEDPA*

In his second § 440.10 motion, petitioner argued that plea counsel "misled him into believing that entering a guilty plea to [the state court] offenses would prohibit and prevent the Federal Government from bringing further criminal charges against him[.]" (SR 76-77) The state court rejected this ineffective assistance claim on its merits. In the instant petition, petitioner likewise claims that he pled guilty to the state charges based on counsel's erroneous advice that, by doing so, the federal government could not pursue charges against him. (Dkt. No. 1)

Where, like here, an appellate court has adjudicated on the merits, the same claims raised in a federal habeas petition, a federal court's review of those same claims is governed by a "highly deferential standard…which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *quoting Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Specifically, under the Anti-Terrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), a federal court cannot grant a petition for a writ of habeas corpus based on a claim that was "adjudicated on the merits in a State court proceeding" unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

To that end, a habeas petition should be granted on the grounds of unreasonableness only if "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (the AEDPA standard for review is intended "only as a guard against extreme malfunction in the state's criminal systems, …not a substitute for ordinary error correction through appeal.").

<u>*Strickland* Ineffective Assistance of Counsel Claims</u>

In *Strickland v. Washington*, 466 U.S. 668, 669 (1984), the Supreme Court established a two-prong test for evaluating Sixth Amendment ineffective assistance of counsel claims. First, a defendant must prove that counsel's performance was deficient, *i.e.*, "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, a defendant must establish that counsel's deficient performance resulted in prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Judicial scrutiny of counsel's performance under the first prong is highly deferential. *Id.* at 689. The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Lafler v. Cooper*, 566 U.S. 156, 162-63 (2012).

With regard to the first prong of the *Strickland* test, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. In the context of a guilty plea, the second prong requires petitioner to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

*Review of Strickland Claims under the AEDPA*

As just described, both *Strickland* and the AEDPA require highly deferential standards of review. Accordingly, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (internal quotation marks and citations omitted). Thus, to succeed on an ineffective assistance of counsel claim, a petitioner seeking federal habeas relief must show, not that the state court applied *Strickland* incorrectly, but that the state court applied *Strickland* "in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002). "The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

*Review of the State Court's Decision Here*

With these principles in mind, the Court finds that the state court's denial of petitioner's ineffective assistance of counsel claim was neither an unreasonable application of *Strickland* nor an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

First, the state court accurately noted that the September 2014 plea hearing occurred more than a year after petitioner's arrest and arraignment on the federal charges. Thus, petitioner was well aware that he was *already* facing federal charges at the time he accepted the plea in state court. Indeed, the federal charges were discussed on a number of occasions during the plea. At no time during the plea colloquy was any

indication given to petitioner that he would no longer face federal charges following his state court plea. To the contrary, petitioner was given every indication that the federal government would continue to prosecute its case against him. For example, prior to his acceptance of the plea, the state court noted that petitioner should consider the pending federal charges when he thought about accepting the plea offer. Also, after petitioner pled guilty, plea counsel expressly stated that, "given the federal charges", petitioner would not make statements about his criminal conduct in connection with the presentence investigation. In addition, petitioner was asked by the state court if any promises were made to him, other than what was stated on the record, in order to convince him to accept the plea. Petitioner answered in the negative.

Petitioner maintains that his plea counsel told him that by accepting a plea in state court to criminal sexual act, his federal child pornography charges would be "barred by double jeopardy." (Dkt. No. 1, pg. 9) However, the state court correctly noted and considered that the "federal prosecution was separate and apart from the conduct of the [state] indictment." (SR 88.) Indeed, the federal charges of production and possession of child pornography arose from the discovery of sexually explicit videos of children on petitioner's computer in December of 2012, including videos petitioner produced or made himself in April and July of 2012. The state court plea to criminal sexual act involved petitioner's admitted sexual abuse of a minor boy in 2011. Thus, the federal charges not only involved the violation of different criminal statutes than those charged in the state indictment, but the federal charges were also based on wholly different criminal conduct from that which formed the basis of the state court plea. Petitioner's contention that his counsel told him that "double jeopardy" applied to the federal charges defies logic and

common sense.[12] Petitioner's claims are also wholly contradicted by the statements made during the plea colloquy regarding the present and ongoing nature of the federal charges.

Even in the extremely unlikely event that plea counsel did inform petitioner that he would not be prosecuted federally if he accepted the state court plea, petitioner still fails to satisfy the prejudice prong of *Strickland*. As stated above, in order to succeed on an ineffective assistance of counsel claim, petitioner must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Assuming for the sake of argument that petitioner pled guilty under the mistaken impression that by doing so he would not be prosecuted federally, he still cannot establish a substantial likelihood that he would have rejected the plea offer had he not been under that impression.

Petitioner accepted a plea to criminal sexual act in the first degree, a class B felony, in exchange for a sentence of five years in. As a result, petitioner, who was 50 years old at the time, avoided the possibility of being convicted at trial as to the most serious count of his state indictment, predatory sexual assault against a child, for which he would have faced a minimum sentence of ten to twenty-five years in prison, with a maximum sentence of life. Moreover, petitioner was well aware, at the time he accepted the plea, that his admissions of the abuse, to law enforcement, would be introduced at trial. Thus, even if petitioner was not promised a benefit regarding the federal charges, the state court plea agreement, standing alone, resulted in a substantial benefit to him. Petitioner avoided a

---

[12] Even if the state and federal charges did encompass the same conduct, the federal charges still would not be subject to double jeopardy. The double jeopardy clause of the Fifth Amendment forbids a second prosecution of the same offenses by the same authority after acquittal or conviction. *See Abbate v. U.S.*, 359 U.S. 187, 194 (1959). It does not forbid federal prosecution subsequent to a prosecution of the same offense under authority of a state; this is known as the dual sovereignty doctrine. *Id.*

potential life sentence and specifically avoided the ten to twenty-five year minimum sentence that he would have received, in the not unlikely event he was convicted at trial. *See Feliz v. United States*, 01 Civ. 5544, 2002 WL 1964347, at *7 (S.D.N.Y. Aug. 22, 2002) ("No prejudice exists when a plea agreement lessens the severity of the sentence the defendant would face if convicted at trial."); *Moore v. United States*, 16 CR 167, 2022 U.S. Dist. LEXIS 113378 (S.D.N.Y. June 27, 2022) (benefit of a plea agreement allowing petitioner to plead guilty to a lesser included offense that avoided a ten-year mandatory minimum, in light of the absence of facts to show that petitioner would have been acquitted, undermines petitioner's claims that he would not have accepted the plea had counsel advised him differently); *Urena v. New York*, 160 F. Supp. 2d 606, 611 (S.D.N.Y. 2001) (denying petitioner's claim of ineffective assistance of counsel where counsel had secured a plea agreement involving "fewer than all the counts in the indictment and for less than the maximum sentence to which the petitioner was exposed.").

In light of these facts, the Court rejects petitioner's self-serving, conclusory, and after-the-fact statement that he only pled guilty in state court because counsel promised him that, by doing so, he would not face federal charges. *See Pham v. United States,* 317 F.3d 178, 182 (2d Cir. 2003) (some objective evidence other than a petitioner's assertions are normally required to show prejudice).

<u>*Request to Amend the Petition*</u>

Petitioner further moves to amend his petition to add "additional facts and evidence of ineffective assistance of counsel during the plea stage." (Dkt. Nos. 14, 25) Federal Rule of Civil Procedure 15(c)(1) provides: "An amendment to a pleading relates back to the date of the original pleading when: . . . . (B) the amendment asserts a claim or defense

that arose out of the conduct, transaction or occurrence set out — or attempted to be set out — in the original pleading." In *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804 (2d Cir. 2000), the Second Circuit applied Rule 15 to a state habeas petitioner's motion to amend his petition and stated that the purpose of the relation-back provision in Rule 15(c)(1)(B) is to "provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Id*.

Here, petitioner seeks to amend his petitioner to add an additional factual basis to his ineffective assistance of counsel claim. Specifically, petitioner now argues that plea counsel erroneously advised him that, if he accepted the state court plea, neither his state conviction nor any of the facts and circumstances surrounding the state court charges could be used against him in the federal prosecution, either during the trial or at the time of sentencing. (Dkt. Nos. 14, 25) Petitioner further alleges that plea counsel also erroneously advised him that evidence from the state proceeding could only be used against him in the federal prosecution if he were to forgo the plea and proceed to trial on the state charges. (*Id*.)

In support of these allegations, petitioner submits an affidavit from his father, William Spoor. (Dkt. No. 22) The affidavit, dated June 30, 2023, states that Mr. Spoor and his wife, petitioner's mother, were present when petitioner met with plea counsel prior to petitioner's acceptance of the plea. (*Id*.) Mr. Spoor's affidavit ostensibly verifies petitioner's factual claims as to the advice provided by plea counsel regarding the impact of a state plea on the federal charges. (*Id*.) To that end, Mr. Spoor's affidavit states that, during the meeting, plea counsel advised petitioner that "[t]he [f]ederal [p]rosecutor cannot use [s]tate evidence against [petitioner] if [petitioner] plead guilty, but if [petitioner]

take the [s]tate charges to trial, the [state court] evidence can and will be used against [p]etitioner in the [f]ederal [c]harges." (Dkt. No. 22)

Respondent moves to strike Mr. Spoor's affidavit on the grounds that it was not submitted to any of the state courts in support of petitioner's direct appeal or collateral attacks on his conviction, and is therefore outside the record of material that may be considered in a habeas proceeding. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *Jackson v. Conway*, 763 F.3d 115, 132 ("[W]hen conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim.").

The Court finds that it need not specifically determine whether petitioner has made the necessary showing under the law to amend his petition or to supplement the record with an affidavit from his father, because these requests are essentially moot. The Court has considered the additional arguments raised by petitioner in the proposed amended petition and in the supplemental affidavit from Mr. Spoor and finds, for the reasons stated below, that they are without merit.[13]

*Exhaustion*

To comply with 28 U.S.C. § 2254(b)(1)'s exhaustion requirement, a petitioner must show that he has "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (per curiam) (emphasis supplied) (*quoting Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)). Thus, "[a] claim has been 'fairly presented' if the state

---

[13] Because the Court has considered all of the factual and legal arguments raised by petitioner, the motion to amend the petition is granted (Dkt. No. 25) and respondent's motion to strike the affidavit is denied (Dkt. No. 24).

courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997); *quoting Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 190-91 (2d Cir. 1982) "Even if a petitioner raises precisely the same legal claims in state and federal proceedings, reliance in the two proceedings upon different factual grounds that fundamentally alter the legal claim will foreclose a conclusion that the claim is exhausted." *Faucett v. Artuz*, 93 Civ. 4098, 1996 WL 1088912, at *3 (E.D.N.Y. Sept. 10, 1996) (*citing Vasquez*, 474 U.S. at 260.). Likewise, the Second Circuit generally has required a petitioner to present all of the allegations underlying an ineffectiveness claim in one application to the state courts, to consider the cumulative effect of the claims as a whole. *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991).

In his second § 440.10 motion, petitioner argued only that plea counsel was ineffective because counsel told petitioner that if he accepted a plea in state court, he would not face federal charges. It is only now that petitioner argues that counsel was ineffective because he told petitioner that, if he pled guilty in state court, neither the state conviction nor any of the facts and circumstances surrounding the state charges could be used against petitioner in the federal proceedings. Although related to petitioner's prior claims, these new allegations, which specifically go to the impact the state court conviction would have on his federal prosecution, seem to "cast[] the ineffective assistance claim in a significantly different light." *Caballero v. Keane*, 42 F.3d 738, 741 (2d Cir. 1994) (*quoting Cruz v. Warden*, 907 F.2d 665, 669 (7th Cir. 1990)). Because petitioner failed to present this factual basis of his claim in state court, it is likely unexhausted. *Id.* (citation omitted). *See e.g., Cumberland v. Graham*, 08 Civ. 04389, 2013

U.S. Dist. LEXIS 187734 (S.D.N.Y. Aug. 5, 2013) (holding that ineffective-assistance claim was not exhausted where claim "was fairly presented to the state court...but on different grounds than are now before the Court.").[14]

However, the AEDPA provides that "an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Therefore, federal district courts may decide on the merits, petitions, like this one, containing both exhausted and unexhausted claims. In this Circuit, the various formulations for the proper standard to be used when relying on § 2254(b)(2) share "the common thread of disposing of unexhausted claims that are unquestionably meritless." *Toliver v. Artus*, 2013 U.S. Dist. LEXIS 886, n. 3 (W.D.N.Y. Jan. 3, 2013) (collecting cases); *see also Barnes v. Uhler*, 6:18-CV-06428, 2021 WL 5176667, at *14 (W.D.N.Y. Nov. 8, 2021) (relying on the "unquestionably meritless" standard to dismiss unexhausted claims). Because the potentially unexhausted claims are unquestionably meritless, the Court will proceed to address their merits.

### *Merits of the Newly Raised Claims*

First, the state court record belies petitioner's claim that plea counsel advised him that the state proceeding could not be used against him at the federal trial and/or sentencing if he pled guilty to the state charges. As noted previously, plea counsel

---

[14] To exhaust an ineffective assistance of counsel claim that relies on matters outside the record, a petitioner must raise it as part of a motion to vacate judgment under NY. Crim. Proc. Law § 440.10." *See O'Neal v. New York*, 465 F. Supp. 3d 206, 219 (E.D.N.Y. 2020). Such motions are not time limited and can be brought "at any time after entry of judgment." *See* N.Y. CPL § 440.10(1). Thus, petitioner's claim is likely unexhausted and not procedurally defaulted. *See Velez v. Ercole*, 06 Civ. 336, 2006 U.S. Dist. LEXIS 71100, (S.D.N.Y. Sept. 26, 2006) ("Because § 440.10 motions can be brought at any time after entry of judgment, this avenue of relief remains open and petitioner is not procedurally barred from pursuing it.").

specifically stated, during the plea colloquy and with petitioner present, that petitioner would not provide information about the crime during the presentence investigation, because of his pending federal charges. Thus, it is apparent that counsel specifically contemplated the fact that aspects of the state case may be both relevant and admissible against petitioner in the federal proceeding. While the federal charges were discussed on a few occasions during the plea, no promises were made that state court evidence, or the plea itself, would be inadmissible in the federal proceeding. Indeed, petitioner acknowledged that no promises had been made to him other than the information stated on the record. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity;" that "subsequent presentation of conclusory allegations unsupported by specifics" is "subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("[S]tatements at a plea allocution carry a strong presumption of veracity.").[15]

Moreover, even if plea counsel had failed to correctly advise petitioner that the state conviction and other evidence related to the state charges could be used against him at his federal trial or sentencing, counsel still would not have been ineffective. It is well-established in the Second Circuit that a defendant need not be informed of the collateral consequences of a guilty plea. *See Farhane v. United States*, 77 F.4th 123 (2d

---

[15] The Court does not credit the self-serving statements of petitioner and the hearsay statements of his father over the statements made on the record, in open court, during the plea colloquy. The Court notes that petitioner's most recent claim, that counsel did not advise him of the impact of the state court conviction on his federal prosecution, contradicts his prior argument, that counsel erroneously informed him that if he pled guilty, he would not face federal charges at all. Further, the statements in Mr. Spoor's affidavit are not only hearsay, but they were made, seemingly for the first time, on June 30, 2023, over eight years after petitioner entered his state court plea and the meeting between petitioner, counsel, and Mr. Spoor took place.

Cir. 2023); *Mastrogiacomo v. United States*, 90 Cr. 565, 2001 U.S. Dist. LEXIS 9761 (S.D.N.Y. July 12, 2001). As relevant here, courts in this Circuit have held that defense attorneys are not obligated to warn their clients about collateral matters such as the fact that by pleading guilty they could face harsher sentences for subsequent convictions. *See Harrison v. Sullivan*, 83 Civ. 6100, 1984 WL 885, at *2 (S.D.N.Y. Sept. 20, 1984) ("[T]he mere possibility of a more severe penalty for a subsequent conviction has been deemed a collateral matter of which the defendant need not be apprised."); *Seifert v. Keane*, 74 F. Supp. 2d 199, 207 (E.D.N.Y. 1999) ("[A] lawyer's failure to warn her client that his present conviction could subject him to an enhanced sentence in the future if he commits another crime does not constitute deficient performance nor does it prejudice the defendant.") (citations omitted), *aff'd*, 205 F.3d 1324 (2d Cir. 2000); *Brooks v. McGinnis*, 05 CV 5977, 2007 WL 3077041, at *4 (E.D.N.Y. Oct. 22, 2007) ("[C]ounsel was not constitutionally ineffective for not advising Petitioner that a collateral consequence of his plea might be the use of the conviction to enhance his sentence in a later case.").[16]

Moreover, federal courts have concluded that, because the potential use of a state guilty plea in a subsequent federal prosecution is a collateral matter, as opposed to a direct consequence of the state plea, a defendant need not be informed of such potential use. *See United States v. Ayala*, 601 F.3d 256, 269-70 (4th Cir. 2010) (rejecting claim

---

[16] The Court notes that petitioner also filed a petition, pursuant to 28 U.S.C. § 2255, challenging his conviction as to the federal possession and production of child pornography charges. (*United States v. Spoor*, 6:13-CR-06059, Dkt. No. 125) That application, which alleged, among other things, that Spoor was not effectively advised of the impact his state conviction would have on his federal sentencing, was denied in its entirety on February 27, 2014. (Dkt. No. 142) Therein, Judge Siragusa recognized that Spoor's federal guideline range at sentencing (360 months to life) would have been the same even if he was in criminal history category I, the lowest possible category. (*Id.* pgs. 21-22) Thus, Spoor's state court conviction for criminal sexual act did not increase his guideline range in the federal proceeding. (*Id.*)

that state court guilty plea was invalid, and therefore inadmissible in federal trial, because defendant was not informed that the plea might be used as evidence in a future federal prosecution); *McCune v. Denney*, 13-CV-0452, 2014 U.S. Dist. LEXIS 38788 at *3, 14-15 (W.D. Mo. Mar. 25, 2014) (habeas relief unavailable based on allegations that plea counsel was ineffective for incorrectly advising petitioner about the effects a Missouri guilty plea would have on pending charges in Kansas and holding that "the use of a plea in a subsequent proceeding is not a direct consequence" of the plea) (*citing United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997)); *United States v. Gillette*, 17 Cr. 30122, 2018 U.S. Dist. LEXIS 49490, at *10-11 & n.51 (D.S.D. Jan. 29, 2018) (counsel not ineffective for failing to inform defendant that tribal court guilty plea could be used in subsequent federal prosecution, since such use was a collateral consequence of the plea). Thus, even if this Court were to credit petitioner's factual averments, petitioner still cannot show, under the strictures of *Strickland*, that counsel's performance fell below an objective standard of reasonableness.

Petitioner's newly raised arguments also fail for lack of prejudice. As noted above, had petitioner proceeded to trial on the state charges and lost, he would have been subject to a *minimum* sentence of ten to twenty-five years. In fact, the state court specifically advised petitioner that he was facing a potential life sentence. Petitioner faced these potential consequences regardless of the outcome of his federal prosecution. Moreover, petitioner has put forth no evidence showing that he was likely to be acquitted of the state charges. The plea negotiated in state court by counsel resulted in a five-year prison sentence and therefore conferred a very significant benefit to petitioner. The Court does not find a reasonable probability that, had petitioner known the state conviction could

be used against him at the federal trial and sentencing, he would have rejected the plea offer, went to trial on the state charges, and foregone the benefits of such a significant reduction of his potential state sentence.

Petitioner maintains that his attorney erroneously advised him that if he accepted a plea, the state conviction and its attendant facts could not be used against him in the federal case, but, if he went to trial on the state charges, the circumstances of the state charges could be used against him. Even in the unlikely event this occurred, the Court finds no prejudice. The evidence against petitioner in the federal prosecution was quite substantial. It included a "cache" of child pornography videos found on petitioner's computer, some downloaded from the internet and some produced by petitioner featuring his son and other minor boys. *See United States v. Spoo*r, 904 F.3d 141 (2d Cir. 2018). The federal trial evidence included these videos; testimony from agents who examined the videos; petitioner's statements to law enforcement admitting to possession of child pornography; and testimony from petitioner's son as well as the other minors who appeared in the videos. *Id*. Petitioner's state court conviction, which was based on wholly different conduct, was not introduced as direct evidence of petitioner's guilt in the federal proceeding. Instead, it was introduced, pursuant to Federal Rule of Evidence 414(a), as evidence of petitioner's motive and sexual interest in children. *Id.* While not insignificant, the state evidence certainly does not appear to have been critical to petitioner's federal conviction. The Court finds no reasonable probability that petitioner would have forgone the plea and risked a potential life sentence, in order to preclude a relatively minor piece

of evidence from being introduced at his federal trial, especially in light of the independent strength of the federal government's case against him.[17]

## **CONCLUSION**

For the foregoing reasons, petitioner's motion to amend the petition (Dkt. No. 25) is granted and respondent's motion to strike the affidavit (Dkt. No. 24) is denied. Further, it is recommended that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) be denied in its entirety and on its merits. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, it is also recommended that a Certificate of Appealability not be issued.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

---

[17] The Court notes Rule 414(a) has a broad scope and permits the admission of not only prior convictions related to sexual abuse or child pornography crimes, but also the admission of similar uncharged conduct and/or similar conduct that did not result in a conviction. *See United States v. Vickers*, 13-CR-28, 2015 U.S. Dist. LEXIS 21130 (W.D.N.Y. Feb. 23, 2015) Thus, if petitioner's counsel had accurately advised him as to the parameters of Rule 414, petitioner would have been informed that evidence of the state charges may have been admissible against him in the federal case, regardless of whether he went to trial or took a plea, and regardless of whether he was ultimately convicted. In such a scenario, there would have been no perceived benefit to petitioner in rejecting the state court plea. Therefore, petitioner is unable to show that, had counsel not given him erroneous advice, the outcome of the state proceeding was likely to be different.

***Failure to file objections, or to request an extension of time to file objections,
within fourteen days of service of this Report and Recommendation WAIVES THE
RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health
& Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law
and/or evidentiary material which could have been, but were not, presented to the
Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale
Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988)*.

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b),
written objections "shall specifically identify the portions of the proposed findings and
recommendations to which objection is made and the basis for each objection, and shall
be supported by legal authority."* ***Failure to comply with these provisions may result
in the District Court's refusal to consider the objection.***

**SO ORDERED.**

DATED:     March 28, 2024
           Buffalo, New York

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge